CASE No. 1054.

STATE v. CLARK.

1. This court declined to consider exceptions to a refusal of the Circuit judge to grant a new trial, as they alleged no errors of law.
2. The Circuit judge committed no error in permitting an experienced physician to give his opinion that deceased was dead before a certain train passed over the body, although such opinion was founded upon facts testified to by others, and not upon matters coming under his own observation.
3. A witness upon the stand repeated a remark made by him when he found a bloody handkerchief in the coat-pocket of deceased—"this looks like he was hurt before the train hurt him;" the presiding judge refused to rule this remark out of the evidence, but in his charge told the jury that they should not regard it. *Held,* that this furnished no ground for a new trial.

Before HUDSON, J., Lexington, June, 1880.

The defendant, Squire Clark, was indicted in February, 1880, for the murder of Walter Scott Hook, in Lexington county, on October 8th, 1879. The deceased was found dead upon the railroad track at day-dawn on October 9th, the body showing unmistakable signs of having been run over by one or more trains of cars. The theory of the state was that deceased was killed before any train passed over the body; the defendant relied upon an alleged insufficiency of proof to establish such fact, or to connect him with the killing. Defendant introduced no testimony.

Dr. W. L. Addy, the eighth witness for the state, testified as follows: Have practiced medicine for thirty years; examined the dead body of Hook; head mashed badly, face not run over, apparently; on the right side of the neck, under the jaw-bone, there was a gash of several inches, as if by a sharp knife; made the *post-mortem* examination at the depot; I never viewed the spot where the body was found; I heard the description of the blood; if killed by a train the blood would be scattered more

than the witnesses have here described, and not pooled; I found no bullet in the body; I give it as my opinion that the body was dead when the train struck it.

Cross-examination.—I say so because the blood was pooled and not scattered along and around; I made no chemical examination of the blood; the appearance of the wound will not enable an expert to tell whether the same was done before or after death; I have not had much experience in surgery.

The matter complained of in the 12th exception is fully stated in the report of the presiding judge.

The defendant was convicted, moved for a new trial, and, it being refused, appealed to this court upon twelve exceptions. It is unnecessary to report the first ten; the others were as follows:

11. Because, it is respectfully submitted, that his Honor erred in ruling that the opinion of Dr. Addy, upon the question as to whether the deceased was alive when the 11 P. M. train passed over the spot where the body was found, was competent testimony, and it is submitted that his Honor, after he heard the answer and explanations by Dr. Addy, should have withdrawn his evidence upon that point from the jury.

12. Because his Honor erred in ruling in the remarks made by the witness, Bieman, to Capt. Griffith over the body on the morning of October 9th, 1879, in regard to the supposed blood upon the handkerchief found in the coat-pocket of deceased.

The report of the Circuit judge is as follows:

The defendant was convicted, and thereupon moved the Circuit Court in arrest of judgment, and, failing in that, for a new trial, upon the same grounds upon which he has appealed to the Supreme Court, and which are embodied in the "case."

These grounds, twelve in number, all refer to the insufficiency of proof, except the 11th and 12th, which allege errors in the rulings of the presiding judge. The case rested exclusively upon circumstantial evidence, and I omitted nothing, so far as I remember, in my efforts to explain to the jury the rules of law by which they were to be governed in weighing circumstantial evidence. I endeavored specially to impress upon them the fundamental rule that the circumstances established when

taken together must be consistent with the theory of defendant's guilt, and inconsistent with any other hypothesis; and hence if the facts proved could be explained upon the theory of a killing by the engine and cars of the railroad as satisfactorily as upon the theory of defendant's agency in the homicide, he could not be convicted; nor should he be convicted if the facts found left their minds in doubt as to which theory to refer the killing. I further told them that the surrounding facts and circumstances of time, place, &c., made a *prima facie* case of killing by the railroad train, and that, before they could convict the defendant, they must find from the other evidence in the case, sufficient proof to rebut this presumption and to satisfy them of defend-ant's guilty agency beyond a reasonable doubt. In every particular I endeavored to throw around the defendant every safeguard vouchsafed to him under the law applicable to the facts of the case.

Two errors in my ruling and instructions are assigned by the defendant's counsel, viz., the 11th and 12th grounds on motion for new trial.

Dr. Addy, an experienced physician, made the *post-mortem* examination of the dead body of Hook, which had been removed from the spot on the railroad where it was first found. That spot and the scene around it he did not see. This medical expert, after listening to the testimony of those who did view the ground, was permitted to give his opinion as to the length of time the body had probably been dead, and whether or not it was probably dead before a certain time when, by the schedule, the first train passed the road that night. This was allowed, because I regarded it a matter peculiarly competent for an expert to testify to, especially an expert who had himself made the *post-mortem* examination, and had attentively listened to the statements of those who found the dead body, and described its appearance, position and surroundings. But I took special pains, in charging the jury, to say to them that the opinions of experts, whilst competent testimony, were not to be taken by them as proof of facts, but, on the contrary, should be weighed carefully, and with caution. Such opinions were often errone-

ous, and only constituted evidence for a jury to weigh along with the other testimony.

The assignment of error in the 12th ground, I did not think well taken. The witness, Bieman, was present with Hawes and Griffith when they came to the dead body on the track. In giving a description of the body, its condition, the signs of blood, the state of the clothing, &c., he stated that in one coat-pocket on which there was no blood a bloody handkerchief was found, upon the discovery of which he remarked to Captain Griffith: "This looks like he was hurt before the train hurt him." I was asked to rule out this remark, but declined to do it, regarding the exclamation or remark of the witness of no consequence, but the fact discovered as alone worthy of weight with the jury. In my charge I so instructed them, telling them that the fact stated, and not the witness' impression, should be considered by them.

The case was earnestly and ably argued on both sides, and submitted to a very intelligent jury. I refused the motion in arrest of judgment and for a new trial, because I was not made conscious of error in my rulings, and because there was evidence sufficient to sustain the verdict of the jury.

*Messrs. H. W. Rice* and *T. S. Arthur,* for appellant.

An expert cannot give an opinion on subjects of general knowledge. 1 *Phil. on Ev.* 778, 779 ; 1 *Greenl. on Ev.* 490 ; 1 *Smith's Lead. Cas.* 286 ; and if the facts are doubtful and remain to be found by the jury, it has been held improper to ask an expert who has heard the evidence, what is his opinion in the case on trial, though he may be asked his opinion upon a similar case hypothetically stated. 1 *Greenl. on Ev.* 492 ; 1 *Whart. & Stille's Med. Jur.,* §§ 288, 289. Here the jury being fully competent to draw conclusions from facts, the expert should have confined himself to facts. 2 *Whart. & Stille's Med. Jur.* (3d ed.,) § 1245.

The 12th exception complains of a ruling which was clearly erroneous. The evidence received was the opinion of a non-expert, and was wholly inadmissible.

*Mr. Solicitor Bonham*, contra.

July 16th, 1881. The opinion of the court was delivered by

SIMPSON, C. J. The accused has been twice tried—charged with the murder of Walter Scott Hook. Upon the first trial he was convicted, but a new trial was granted him by the Circuit judge, and now, upon the second, he has been convicted again. Upon this, his second conviction, he moved the court below in arrest of judgment, and failing in that for still another trial, on various grounds. These motions were refused by the Circuit judge, and he now appeals to this court.

His grounds of appeal are twelve in number. The first ten embrace exceptions expressed in different forms, to the finding of the jury as to matters of fact, and they attack the verdict for insufficiency of proof. These have been passed upon by the Circuit judge upon motion for a new trial. The evidence against the accused seems to have been circumstantial entirely. In view of this fact the judge, in his charge, threw every possible safeguard around the prisoner. He appears to have impressed fully upon the minds of the jurors the fundamental rule in such cases— that the circumstances established, when taken together, must be consistent with the theory of the defendant's guilt, and inconsistent with any other hypothesis. Under this charge the jury solved these circumstances against the accused, and pronounced him guilty. We see no error of law growing out of these ten exceptions on the part of the Circuit judge in refusing a new trial, and, therefore, they need not be considered further.

The last two exceptions—the 11th and 12th—assign errors of law in the rulings of the Circuit judge, and are properly before us.

The Circuit judge, in his report of the case, states that Dr. Addy, " an experienced physician, made the *post-mortem* examination of the dead body, which had been removed from the spot on the railroad where it was found." That spot and the scene around it he did not see, but after listening to the testimony of those who did view the ground, Dr. Addy was permitted by the court to give his opinion as to the length of time the body had probably been dead, and whether or not it was

probably dead before a certain train passed the road that night upon schedule time. The ruling of the judge that this testimony was competent, is the basis of the 11th exception.

Mr. Greenleaf, vol. I., Section 440, says: " That in questions of science, skill or trade, or others of like kind, persons of skill, sometimes called experts, may not only testify to facts, but are permitted to give their opinions in evidence. Thus, the opinions of medical men are constantly admitted as to cause of death or disease or the consequences of wounds, and as to the sane or insane state of a person's mind, as collected from a number of circumstances, and as to other objects of professional skill; and such opinions are admissible in evidence, though the witness founds them, not on his own personal observation, but on the case itself as proved by other witnesses."

Dr. Addy, as stated in the report, was an experienced physician, and was in law an expert as to all matters embraced within the range of his profession. Had he seen the dead body, therefore, when first found on the railroad track, there could be no doubt that his opinion as to the length of time it had been dead would be competent, on the ground that he was an expert, and this fact is within the range of his profession.

But this principle, as appears from the authority already cited, does not confine the opinion of the expert to facts coming under his own observation alone, but it permits him to found and express his opinion upon facts testified to by others. This was all that was done in this case, and the authority from Greenleaf seems to be directly in point. It fully warranted, in our judgment, the ruling of the Circuit judge as to the competency of Dr. Addy's opinion.

One of the witnesses who was present when the dead body of the unfortunate Hook was found on the railroad track, in giving a description of the body, its condition, the signs of blood, the state of the clothing, &c., stated that in one coat-pocket on which there was no blood, a bloody handkerchief was found, upon the discovery of which, he further stated, that he remarked to the others present: "This looks like he was hurt before the train hurt him." The judge was asked to rule out this remark, which he declined to do, regarding it, as he says, as the mere exclama-

tion of the witness at the time, and of no consequence, the fact discovered alone being worthy of weight with the jury.

In his charge he so instructed the jury, telling them distinctly that the fact stated and not the impression of the witness should be considered by them. Even if the admission of this remark, which is the foundation of the 12th exception, was improper, of which we are not satisfied, the judge, in his charge, in effect ruled it out, as he pointedly instructed the jury that they were not to consider it.

The judge, in the conclusion of his report, states that he refused the motion in arrest of judgment and for a new trial, because he was not made conscious of any error in his rulings, and because, in his opinion, there was sufficient evidence to sustain the verdict.

In view of the awful fate impending the accused, we have carefully examined the case, but we see nothing whatever which can be interposed in his behalf. He has now been tried twice. On the first trial the Circuit judge, before whom he was then tried, out of tenderness, no doubt, granted a new trial. Upon the second trial all the safeguards vouchsafed to him by the law were thrown around him by the judge who then tried him. He was again found guilty. We see no error in the rulings excepted to, and there is no other alternative but that the law shall take its course.

The judgment of this court is that the judgment of the Circuit Court be affirmed.

MCIVER and MCGOWAN, A. J.'s, concurred.